**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:25-cv-01991-MDB

ARCHIE MORGAN,

Plaintiff,

v.

V2X, INC.,

Defendant.

---

**DEFENDANT V2X, INC.'S PARTIAL MOTION TO DISMISS**

---

Defendant V2X, Inc., ("V2X") respectfully moves this Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss multiple of Plaintiff Archie Morgan's ("Plaintiff") claims in his Employment Discrimination Complaint [ECF No. 1] ("Complaint"), with prejudice. Specifically, V2X asks the Court to dismiss Claims Three through Ten in the Complaint, which are Plaintiff's claims for hostile work environment under Title VII of the Civil Rights Act ("Title VII") (Claim Three), all claims arising under 42 U.S.C. Section 1981 ("Section 1981") (Claims Four and Five), all claims arising under the Colorado Anti-Discrimination Act ("CADA") (Claims Six, Seven, and Eight), for retaliation under 10 U.S.C. § 4701[1] (the Defense Contractor Whistleblower Protection or "DCWPA") (Claim Nine), and for wrongful discharge in violation of

[1] 10 U.S.C. § 2409, which Plaintiff cites throughout his Complaint, was renumbered to 10 U.S.C. § 4701 in 2021. Pub. L. No. 116-283, § 1863(b), 134 Stat. 4278 (2021). V2X uses the current numbering in this Motion.

Colorado public policy ("Wrongful Discharge") (Claim 10), for the following reasons.[2]

## I. PRELIMINARY STATEMENT

While his claims sound under numerous state and federal statutes and causes of action, the gravamen of Plaintiff's complaint is that V2X wrongfully terminated his employment. However, most of Plaintiff's claims fail to state a claim as a matter of law, for a variety of reasons.

Plaintiff worked for V2X at a U.S. military base located on the Republic of the Marshall Islands ("RMI"), and all the employment actions Plaintiff challenges occurred while he worked in RMI. That renders Plaintiff's claims under Section 1981 and Colorado law deficient, as these laws do not apply extraterritorially. Plus, Plaintiff failed to exhaust administrative remedies as to his Title VII and CADA hostile work environment claims, as he must, and Plaintiff fails to plausibly allege a hostile work environment claim in any event. Finally, Plaintiff has not plausibly alleged that he made a protected disclosure under 10 U.S.C. § 4701, or that V2X knew of the purported protected disclosure.

## II. RELEVANT FACTUAL ALLEGATIONS[3]

V2X hired Plaintiff, who identifies as a "Black American," in January 2024. Compl. D.I. ¶ 1. He served as a Senior Maintenance Manager at a U.S. Army Garrison located in the RMI on the Kwajalein Atoll. *Id*. D.I ¶ 2, p. 28 (referencing Plaintiff's contract to work in the Kwajalein

---

[2] Conferral Certification. Though not required to do so under this Court's Practice Standards or the Local Rules, V2X conferred with Plaintiff regarding this motion. Plaintiff opposes the motion.

[3] While V2X would dispute many of Plaintiff's factual allegations during the course of litigation, it takes them as true in this Motion, as it must.

Atoll).[4]

In early November 2024, Plaintiff became involved in a dispute with "over 50 employees of Marshallese national origin." *Id.* D.I ¶ 3. Plaintiff claims certain "male employees entered a female employee's locker room, kicked her shower door, and vandalized her property," and that this action "created a hostile work environment based on sex." *Id.* D.II ¶ 2. Plaintiff reported these allegations to V2X's Human Resources Department and "separat[ed] the co-ed locker rooms" at the base. *Id.* D.II ¶¶ 3–4. These and other actions of Plaintiff resulted in "a mass walkout" by male Marshallese employees and "a local government official (the Mayor)" became involved in the dispute. *Id.* D.I ¶ 4, D.II ¶ 4. Shortly after, V2X placed Plaintiff "on administrative leave" pending investigation. *Id.* D.I ¶¶ 4–5; p. 19 ("I was brought into the office and placed on suspension pending investigation into the allegations against me," which related to Plaintiff's "management style towards the mostly Marshallese demographic" and resulted in Plaintiff being "accused of being discriminatory and violating human rights").

Plaintiff claims that on November 17, 2024, he "made a protected disclosure to the DoD Inspector General by filing a formal Whistleblower Complaint [the "OIG Complaint"] regarding matters he reasonably believed constituted evidence of mismanagement and abuse of authority." Compl. D.IX ¶ 2. However, the OIG Complaint, which is attached to Plaintiff's pleading [Compl. p. 27–31], alleges only that Plaintiff "assisted in reporting sexual harassment and discrimination on October 31, 2024"; it does not allege any sort of mismanagement or abuse of authority. *See id.*

---

[4] "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir.2001).

On November 23, 2024, following the investigation, V2X terminated Plaintiff's employment. *Id.* D.I ¶ 6.

On March 17, 2025, Plaintiff filed a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), which alleges that his termination was discriminatory on the basis of his race and national origin and constituted retaliation. *See id*. p. 19−21. It does not allege a claim or any facts regarding a hostile work environment. On April 1, 2025, the EEOC issued a notice of right to sue letter. *Id.* p. 23−24.

## III. STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes all well-pled facts in the complaint are true and permits all reasonable inferences from that pleading. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Legal conclusions worded as factual allegations must be disregarded. *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. Plaintiff's Section 1981 and Colorado Claims Fail As A Matter Of Law Under The Presumption Against Extraterritoriality (Claims 4, 5, 6, 7, 8, 10).

Plaintiff's claims under Section 1981, CADA and for Wrongful Discharge each fail because all the employment actions Plaintiff challenges occurred outside the territorial jurisdiction of the United States and Colorado. Most of these laws presumptively do not apply to the extraterritorial conduct, and Plaintiff is unable to overcome this presumption.

Under federal law, the analysis of whether a statute has extraterritorial application begins

with the language of the statute. *Equal Employment Opportunity Comm'n v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991). "It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *Id.* (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)). This principal reflects the assumption that "Congress legislates against the backdrop of the presumption against extraterritoriality." *Id.* The presumption against extraterritoriality can be overcome only if "the affirmative intention of the Congress [is] clearly expressed." *Id.* (quoting *Benz v. Compania Naviera Hidalgo, SA*, 353 U.S. 138, 147 (1957)). When Congress's intent that a statute apply domestically is clearly expressed, the statute should not be given extraterritorial effect. *Zahourek v. Arthur Young & Co.*, 750 F.2d 827, 829 n.* (10th Cir. 1984).

Likewise, Colorado courts presume Colorado laws lack extraterritorial effect absent clear legislative intent to the contrary. *E.g.*, *Airquip, Inc. v. HomeAdvisor, Inc.*, No. 16-cv-01849-PAB-KLM, 2017 WL 4222618, at *6 (D. Colo. Sept. 21, 2017) (dismissing claim under Colorado Consumer Protection Act because statute does not apply extraterritorially). "The presumption against extraterritorial effect can be overcome if a party presents 'authority manifesting a contrary intent' from the Colorado legislature." *Airquip*, 2017 WL 4222618 at *6 (citing *Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088, 1089 (Colo. 1977)). Courts consistently apply the presumption against extraterritoriality to hold that state employment statutes do not apply to U.S. citizens working abroad absent a clear statutory indication of intent of extraterritorial application. *E.g.*, *Hart v. Dresdner Kleinwort Wasserstein Sec., LLC*, No. 06 Civ. 0134 (DAB), 2006 WL 2356157, at *7 (S.D.N.Y. 2006) (holding employee could not sue her New York employer under New York labor law over work performed in England after intra-company transfer); *Risinger v.*

*SOC LLC*, 936 F. Supp. 2d 1235, 1249−51 (D. Nev. 2013) (finding presumption against extraterritorial effect precluded application of Nevada Wage Act to work performed in Iraq).

Applying these principles here, each of Plaintiff's claims under Section 1981 and Colorado statutes fail to state a claim, because none of these laws have extraterritorial effect.

The plain language of Section 1981 "unambiguously confirms" that Congress intended for Section 1981 to apply domestically but not extraterritorially. *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 301 (2d Cir. 2006).[5] 42 U.S.C. § 1981(a) provides, in relevant part, "[a]ll persons **within the jurisdiction of the United States** shall have the same right in every State and Territory to make and enforce contracts. . . ." (emphasis added). Thus, Congress did not intend for 42 U.S.C. § 1981 to apply outside of the United States. *See Ofori-Tenkorang*, 460 F.3d at 305 (affirming dismissal of Section 1981 claim because statute did not reach "conduct of which plaintiff complains occurred while plaintiff was overseas"). Indeed, "courts that have addressed the extraterritorial reach of Section 1981 have consistently determined that the statute does not apply to conduct outside of the United States." *Marshall v. Exelis Sys. Corp.*, No. 13-CV-00545-CMA-KMT, 2014 WL 1213473, at *5 (D. Colo. Mar. 24, 2014).[6]

[5] Unlike Section 1981, "Congress has amended Title VII to reach conduct occurring outside of the United States." *Marshall v. Exelis Sys. Corp.*, No. 13-CV-00545-CMA-KMT, 2014 WL 1213473, at *3 (D. Colo. Mar. 24, 2014).

[6] *See also Gulaid v. CH2M Hill, Inc.*, No. 15-CV-04824-JST, 2016 WL 5673144, at *6 (N.D. Cal. Oct. 3, 2016) ("Section 1981 only applies to claims arising from discrimination committed while a plaintiff was within the jurisdiction of the United States"); *Collins v. CSA, Ltd.*, 3:11-cv-0179-G, 2012 WL 1059025, *2−4 (N.D. Tex. 2012) (dismissing § 1981 claims against a military contractor because the plaintiff was stationed in Kuwait throughout his employment); *Gallaspy v. Raytheon Technical Servs. Co.*, 2005 WL 1902534, *5 (W.D. Tex. 2005) (dismissing § 1981 claims brought by a military contractor's employee who was assigned to work on a U.S. military base in South Korea).

Plaintiff worked for V2X in the RMI, and all the actions he complains of in his Complaint occurred in the RMI. This is fatal to his Section 1981 claims, because "the presumption against extraterritoriality dictates that Section 1981 does not apply to employees working outside of the United States or its territories." *Marshall*, 2014 WL 1213473, at *9.

As to his Colorado claims, Plaintiff does not allege any connection to Colorado or any unlawful act that occurred in Colorado.[7] Nothing in the employment practices provisions of CADA, C.R.S. §§ 24-34-400.2 – 24-34-408, "expressly provide[s] for extraterritorial application" and "[i]n the absence of any extraterritorial phraseology in [the] Act, it cannot be construed to have an extraterritorial effect." *Peerless Ins. Co. v. Clark*, 487 P.2d 574, 575 (1971); *accord Sanchez v. Q'Max Sols., Inc.*, No. 17-CV-01382-CMA-KLM, 2018 WL 1071133, at *4 (D. Colo. Feb. 27, 2018) (finding application of Colorado labor laws to employee "who performed no work in Colorado" "would run afoul of the well-established presumption against the extraterritorial application of state laws"); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-02432-WYD-KMT, 2013 WL 5448078, at *6 (D. Colo. Sept. 27, 2013) (dismissing consumer protection claims because the laws did not "contain express language that they apply extraterritorially").

CADA's primary purpose is to eliminate employers' discriminatory practices, with a focus on the "many employees **<u>in this state</u>** [who] still experience discrimination and harassment in the workplace[.]" C.R.S. § 24-34-400.2(1)(c) (General Assembly Declaration) (emphasis added). Here, the alleged conduct relevant to CADA occurred exclusively in the RMI, and Plaintiff does

[7] The only reference to Colorado in the Complaint is to identify V2X's address as in Colorado Springs. *See* Compl. B. V2X's principal place of business is in Reston, VA, though it does have an office in Colorado Springs. In any event, Plaintiff does not allege that any discriminatory or unlawful conduct occurred in Colorado.

not allege any wrongful act that occurred in Colorado. Plaintiff does not even allege he is or was a resident of Colorado, or if he has any other material connection to the state. *See* C.R.S. § 24-34-400.2(1)(a) ("[a]ll ***Coloradans*** should have an equal opportunity to succeed in the workplace and are entitled to a workplace that is safe and free from discrimination and harassment based on their protected status.") (emphasis added). *Hathaway Lighting Inc. v. Indus. Claim Appeals Office*, 143 P.3d 1187, 1191 (Colo. App. 2006) (affirming denial of extraterritorial application of statute because the plaintiff lacked the requisite ties to Colorado also provided by statute). Because Plaintiff's employment and the conduct central to these claims occurred in the RMI, the presumption against extraterritoriality bars Plaintiff's CADA claims.

Likewise, Plaintiff's Wrongful Discharge claim, despite arising under Colorado common law, fails because Plaintiff's employment and the conduct central to this claim occurred in the RMI. *See Hill v. Gergun Transportation, Inc.*, No. 2:24-CV-1751-CSK, 2024 WL 4203379, at *13 (E.D. Cal. Sept. 16, 2024) (dismissing state wrongful discharge claim due to allegations that the conduct giving rise to the liability of the adverse action occurred outside of the state).[8]

**B. Plaintiff Fails To State A Hostile Work Environment Claim**

[8] Even if Plaintiff could avail himself of Colorado common law (he cannot), his Wrongful Discharge claim must still fail. "Colorado law provides that the public policy exception [to employment at-will] is not available when a statute provides the employee a wrongful discharge remedy." *Ybarra v. Comprehensive Software Sys., LLC*, No. 18-CV-01679-NYW, 2019 WL 266310, at *3 (D. Colo. Jan. 18, 2019). In his Complaint, Plaintiff alleges he was discharged because he "oppos[ed] sexual harassment," conduct for which Title VII and CADA provides a remedy, and because he "fil[ed] a whistleblower complaint with the DoD Inspector General," conduct for which the DCWPA provides a remedy. *See* Compl. D.X ¶ 2–3. *Spaziani v. Jeppesen Sanderson, Inc.*, No. 14-CV-03261-REB-KMT, 2015 WL 5307971, at *3 (D. Colo. Sept. 11, 2015) (collecting authorities and holding "no wrongful discharge claim may lie when the statute on which it is premised already provides a remedy for discriminatory or retaliatory discharge").

Plaintiff's hostile work environment claims also fail to state a claim for two reasons. First, Plaintiff did not administratively exhaust remedies as to a hostile work environment claim. Second, Plaintiff has not plausibly alleged the claim in any event.

**1. Plaintiff Did Not Administratively Exhaust His Hostile Work Environment Claims (Claims 3, 8)**

"Exhaustion under Title VII is . . . an affirmative defense that an employer may raise on a Rule 12(b)(6) motion to dismiss." *Woodfork v. Jefferson Cnty. Fairgrounds*, No. 20-CV-01173-WJM-NYW, 2020 WL 10317421, at *5 n.5 (D. Colo. Dec. 8, 2020) (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018)), *report and recommendation adopted in relevant part*, 2021 WL 2283816 (D. Colo. June 4, 2021). A court may dismiss a claim on the pleadings based on an affirmative defense "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). Additionally, in a motion to dismiss, "courts may consider not only the complaint itself, but also . . . documents incorporated into the complaint by reference," such as the Charge. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In other words, where the defendant's affirmative defense depends on the contents of a plaintiff's EEOC charge, and the charge is referenced in the complaint, the court may consider the contents of the charge for the purpose of deciding a Rule 12 motion. *See Schone v. Sodexo, Inc.*, No. 1:19-CV-02283-SKC, 2021 WL 915937, at *4 (D. Colo. Mar. 10, 2021) (holding EEOC charge was "central to [plaintiff's] discrimination claims insofar as the question of proper exhaustion is concerned").

Claims under Title VII and CADA must be "preceded by filing a charge of discrimination with the EEOC [or appropriate state agency] . . . ." *See Harp v. Dep't of Human Servs.*, 932 F. Supp. 2d 1217, 1224 (D. Colo. 2013) (citing 42 U.S.C. § 2000e-5); *Brooke v. Rest. Servs., Inc.*,

906 P.2d 66, 68 (Colo. 1995) (holding C.R.S. § 24-34-306(14) "require[s] . . . that an individual claimant exhaust administrative remedies for claims brought" under CADA).[9] "Compliance with this administrative exhaustion requirement . . . is a condition precedent to bringing suit." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1176 (10th Cir. 2011). "**[A] plaintiff may not pursue 'a Title VII [or CADA] action based upon claims that were not part of a timely-filed EEOC charge** . . . .'" *Woodfork*, 2020 WL 10317421, at *5 (D. Colo. Dec. 8, 2020) (emphasis added) (citing *Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012)).

"The Court looks to the discrimination charge filed with the EEOC in determining whether administrative remedies have been exhausted." *Sisneros v. Manheim Denver*, No. 18-CV-00511-STV, 2018 WL 5298325, at *3 (D. Colo. Oct. 24, 2018) (citation omitted). "In federal court, a plaintiff's claim is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Alfonso v. SCC Pueblo Belmont Operating Co.*, 912 F. Supp. 2d 1018, 1030 (D. Colo. 2012). The purpose of the administrative exhaustion requirement is two-fold: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Perkins v. Fed. Fruit & Produce Co.*, 945 F. Supp. 2d 1225, 1245 (D. Colo. 2013).

Here, Plaintiff failed to exhaust administrative remedies as to his hostile work environment claims under Title VII and CADA. The Charge does not cite hostile work environment as a claim, nor does it in any way reference or even hint of facts that could give rise to such a claim. *See*

[9] Claims under Section 1981 do not require administrative exhaustion, though, as discussed *supra*, these claims are nonetheless deficient. *Haithcox v. GEO Grp., Inc.*, No. 07-CV-00160 REBMEH, 2008 WL 2396808, at *2 (D. Colo. June 9, 2008) (recognizing a "§ 1981 discriminatory discharge claim is not subject to dismissal based on her failure to exhaust her administrative remedies").

*generally* Compl. p. 19–20. It alleges only that Plaintiff was wrongfully terminated, not that anyone ever subjected him to intimidating, offensive, or abusive conduct based on his race or national origin. *See Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667–68 (10th Cir. 2004) (affirming dismissal for failure to exhaust remedies where "[n]othing in Mitchell's EEOC complaint indicates a hostile work environment," and that "investigation of his 'failure to promote' claim could not reasonably be expected to lead to a hostile work environment/racial harassment claim"); *Cirocco v. McMahon*, 294 F. Supp. 3d 1086, 1108 (D. Colo. 2018) ("To the extent that [plaintiff] makes harassment or hostile-work-environment claims, such claims must be dismissed because they were not exhausted through the EEOC administrative process."), *aff'd in relevant part*, 768 F. App'x 854 (10th Cir. 2019).

**2. Plaintiff Does Not Plausibly Allege Hostile Work Environment Claims (Claims 3, 5, 8)**

Leaving aside the failure to exhaust administrative remedies, Plaintiff's hostile work environment claims still fail on grounds that Plaintiff fails to plausibly allege the claim.

Under federal law, "[t]he elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic . . . ; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kansas State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014).[10] CADA states a similar formulation of the claim, although it has modified the fourth

[10] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997) ("standards and burdens under § 1981 are the same as those under Title VII").

element to require allegations of conduct that is "subjectively offensive to the individual alleging harassment and is objectively offensive to a reasonable individual who is a member of the same protected class." C.R.S. § 24-34-402(1.3) (noting also the conduct must still be "made a term or condition of the individual's employment"); *Farrah v. City & Cnty. of Denver*, No. 23-CV-02868-KAS, 2025 WL 958541, at *16 n.9 (D. Colo. Mar. 29, 2025) (discussing amendments to CADA).

While Plaintiff alleges membership in protective class, he does not allege being subjected to unwelcome harassment, that the harassment was due to his protective class, or that the harassment impacted a term or condition of his employment. *See Schone v. Sodexo, Inc.*, No. 1:19-CV-02283-SKC, 2021 WL 915937, at *6 (D. Colo. Mar. 10, 2021) (granting motion to dismiss hostile work environment claim where complaint included "no factual allegations which plausibly allege" that plaintiff was subjected to unwelcome harassment); *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 523 (10th Cir. 2017) (affirming dismissal of harassment claim where plaintiff failed to allege conduct "that was so severe or pervasive that a reasonable person would find it altered the conditions of [plaintiff]'s employment and created an abusive working environment").

As to his race claims, all that Plaintiff alleges is unspecified "racially charged rumors among employees and management that his job was in jeopardy." Compl. D.III ¶ 2. He does not allege the substance of any of these alleged statements, nor does he allege how they impacted the terms or conditions of his employment. And Plaintiff's allegation that this unspecified conduct "was so severe and pervasive that it altered the terms and conditions of plaintiff's employment" is exactly the type of mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" that the Court should disregard. *Twombly,* 550 U.S. at 555. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[I]n examining a complaint under Rule 12(b)(6),

we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."). In any event, rumors an employee may lose their job do not constitute a hostile work environment, particularly where the allegation of the rumors being "racially charged" is entirely conclusory. *See French v. Denver Pub. Sch.*, No. 23-CV-01614-NYW-MDB, 2024 WL 3276159, at *12−13 (D. Colo. July 2, 2024) (dismissing claim of discrimination because the allegations "fail[ed] to show any link between the rumors and [the plaintiff's protected class] suggest[ing] that the rumors were motivated by . . . animus"); *Twombly*, 550 U.S. at 555 (holding "labels and conclusions" are insufficient to state a claim).

As to his national origin claims, beyond identifying as American, Plaintiff's Complaint contains no allegations of a hostile work environment based on his national origin whatsoever.

**C. Plaintiff's DCWPA Claim Fails (Claim 9)**

"To give rise to whistleblower protection" under the DCWPA, Plaintiff must make a disclosure "that the plaintiff reasonably believes is related to an act described in § 4701(a)(1)(A)–(C): 'Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, [ ] a violation of law, rule, or regulation related to a Department contract .... [or] [a] substantial and specific danger to public health or safety.'" *See Kappouta v. Valiant Integrated Servs.*, LLC, 60 F.4th 1213, 1217 (9th Cir. 2023) (citing 10 U.S.C. § 4701(a)(1)). Thus, to state a claim under the DCWPA, Plaintiff must allege "(1) he engaged in protected activity as described in the statute, (2) the . . . decision maker knew he engaged in protected activity, and (3) his protected activity was a contributing factor in the adverse employment action taken against him." *Cejka v. Vectrus Sys. Corp.*, 292 F. Supp. 3d 1175, 1192 (D. Colo. 2018); *see also* 10 U.S.C. § 4701(c)(7) (providing

that the legal burdens of proof under 5 U.S.C. § 1221(e) govern DCWPA claims).

Here, Plaintiff has not plausibly alleged a DCWPA claim for multiple reasons.

*First*, Plaintiff does not allege any connection between his alleged protected disclosures and the contract between the Department of Defense (the "DoD") and V2X, as he must. Plaintiff's OIG Complaint (which is attached to his Complaint) relates solely to "reporting sexual harassment and discrimination" with regards to an incident in a locker room shared by male and female employees. *See* Compl. p. 29. Nowhere does he allege how this report relates in any way to the contract V2X has with the DoD, let alone "[g]ross mismanagement," or "abuse of authority" **related to DoD contract**. *See Kappouta*, 60 F.4th at 1217 (holding "a violation of law . . . related to a Department contract" means "bearing significant relation to" the contract, and that "a violation of law is related to the contract if it is related to the purpose of the contract or affects the services provided by the defense contractor to the DoD"); *Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 194 (4th Cir. 2020) (affirming dismissal where "[t]t is not clear, . . . [plaintiff] made a protected disclosure that would trigger the anti-reprisal protection provided by the DCWPA"). Plainly put, merely alleging a violation of company policy or of the law is not enough to state a claim under the DCWPA. For example, the Ninth Circuit affirmed dismissal of a DCWPA claim where plaintiff alleged an "assault," holding that even if the assault were a violation of the law, plaintiff did not present "a sufficient nexus between the [assault] and the DoD-Valiant contract." *Kappouta*, 60 F.4th at 1217. In *Kappouta*, as here, Plaintiff's allegations "do not encompass a disclosure sufficiently related to the DoD-[V2X] contract to give rise to DCWPA protection." *Id.*

*Second*, while Plaintiff alleges that V2X terminated his employment "a mere six days after his protected disclosure," Compl. D.IX ¶ 3, *i.e.*, his submission of a complaint to the OIG, he does

not allege that V2X **knew** of this disclosure to the OIG, as he must. *See Greer v. Gen. Dynamics Info. Tech., Inc.*, 808 F. App'x 191, 193 (4th Cir. 2020) ("In order to survive a motion to dismiss, [plaintiff's] DCWPA claim must allege facts sufficient to plausibly show that . . . his employer was on notice of that disclosure").

*Third*, like claims under Title VII and CADA, the DCWPA requires exhaustion of administrative remedies before a plaintiff may bring a cause of action in court. The DCWPA requires "[a] person who believes that [they have] been subjected to a reprisal" to "submit a complaint to the Inspector General" of the relevant executive agency, who shall investigate and submit a report to the head of the agency and the relevant parties." 10 U.S.C. § 4701(b)(1). After receiving the Inspector General's report, the head of the agency will issue an order granting or denying relief." *Id.* § 4701(c)(1). While Plaintiff does allege he filed an OIG Complaint, he otherwise fails to allege facts sufficient to show that he exhausted administrative remedies under the DCWPA, as he must. *See Dowd v. Catalyst Campus for Tech. & Innovation*, No. 1:23-CV-33-JNP-DAO, 2023 WL 8702587, at *1 (D. Utah Dec. 15, 2023) (granting motion to dismiss "[b]ecause Plaintiff has made no effort to allege or argue that she exhausted her administrative remedies before filing her complaint").

## V. CONCLUSION

For the foregoing reasons, V2X respectfully moves the Court to dismiss Claims Three, Four, Five, Six, Seven, Eight, Nine and Ten in the Complaint for failure to state a claim, and that the dismissal should be with prejudice.

Dated: September 5, 2025

*/s/ David C. Gartenberg*
David C. Gartenberg
dgartenberg@littler.com
Billie Jo M. Risheim
brisheim@littler.com
LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Facsimile: 303.629.0200

*Attorneys for Defendant*
*V2X, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of September 2025, I electronically filed the foregoing **DEFENDANT V2X, INC.'S PARTIAL MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, and will send notification of such filing by U.S. Mail to the following:

Archie Morgan
14514 Pearl Flats
San Antonio, TX 78253

*Pro Se Plaintiff*

*/s/ Elisabeth L. Egan*
Elisabeth L. Egan