# EXHIBIT B TO DEFENDANT'S NOTICE REGARDING PLAINTIFF'S USE OF AI TOOLS

## *Archie Morgan v. V2X, Inc.*

## Case No.: 1:25-cv-01991-SKC-MDB

Back to Google Cloud Terms Directory (/product-terms) > Current

# Google Cloud Terms of Service

New to Google Cloud? A quick overview of Google Cloud's online contracting can be found here (/terms/overview).

For translations of this Agreement into other languages, please click on the appropriate link: Bahasa Indonesia (https://services.google.com/fh/files/misc/id-google-cloud-terms-of-service.pdf), Deutsch (https://services.google.com/fh/files/misc/de-google-cloud-terms-of-service.pdf), Español (Latinoamérica) (https://services.google.com/fh/files/misc/es-419-google-cloud-terms-of-service.pdf), Français (https://services.google.com/fh/files/misc/fr-google-cloud-terms-of-service.pdf), Italiano (https://services.google.com/fh/files/misc/it-google-cloud-terms-of-service.pdf), Nederlands (https://services.google.com/fh/files/misc/nl-google-cloud-terms-of-service.pdf), Português (https://services.google.com/fh/files/misc/pt-br-google-cloud-terms-of-service.pdf), 한국어 (https://services.google.com/fh/files/misc/ko-google-cloud-terms-of-service.pdf), 日本語 (https://services.google.com/fh/files/misc/ja-google-cloud-terms-of-service.pdf)

If you are accessing the Services as a customer of an unaffiliated Google Cloud reseller, these terms will apply to you in relation to your use of the Services (subject to the "Resold Customers" section of the applicable Service Specific Terms). Notwithstanding the applicability of these terms, if you fall under one of the exempt categories described at https://cloud.google.com/terms/direct-tos-exemptions (https://cloud.google.com/terms/direct-tos-exemptions) for the applicable Services, these terms do not apply to you, unless you and Google agree otherwise in writing. If you become exempt from these terms after the Effective Date, this will not affect any liability arising between the parties prior to the date that you become exempt.

If you signed an offline variant of this Agreement for use of the Google Cloud Platform Services, Google Workspace Services, SecOps Services, Looker

(original) Services, or Cloud Identity Services under the same Google Cloud Platform Services, Google Workspace, SecOps Services, Looker (original) Services, or Cloud Identity Services Account, the terms below do not apply to you, and your offline terms govern your use of the applicable Services.

These Google Cloud Terms of Service (together, the "Agreement") are entered into by Google and the entity or person agreeing to these terms ("Customer") and govern Customer's access to and use of the Services. "Google" has the meaning given at https://cloud.google.com/terms/google-entity (https://cloud.google.com/terms/google-entity).

This Agreement is effective when Customer clicks to accept or otherwise agrees to it (the "Effective Date"). If you are accepting on behalf of Customer, you represent and warrant that (i) you have full legal authority to bind Customer to this Agreement; (ii) you have read and understand this Agreement; and (iii) you agree, on behalf of Customer, to this Agreement.

**1. Provision of the Services.**

1.1 *Services Use*. During the Term, Google will provide the Services in accordance with this Agreement, including the SLAs, and Customer may use the Services, and integrate the GCP Services and Looker (original) Services into any Customer Application that has material value independent of the Services, in accordance with this Agreement. For clarity, Customer may not integrate the Google Workspace Services, SecOps Services, or Cloud Identity Services into Customer Applications or create or host Customer Applications using the Google Workspace Services, SecOps Services, or Cloud Identity Services under this Agreement, and Customer may only integrate Looker (original) Services into a Customer Application as provided in the Service Specific Terms.

1.2 *Admin Console*. If applicable, Customer will have access to the Admin Console, through which Customer may manage its use of the Services.

1.3 *Accounts; Verification to Use GWS Services or Cloud Identity Services*.

(a) *Accounts*. Customer must have an Account to use the Services and is responsible for the information it provides to create the Account, the security of its passwords for the Account (including any keys for Google APIs) and for any use of its Account. Google has no obligation to provide multiple accounts to Customer.

(b) *Verification to use GWS Services or Cloud Identity Services*. Customer must verify a Domain Email Address or a Domain Name to use GWS Services or Cloud Identity Services. If Customer does not have valid permission to use the Domain Email Address or does not own or control the Domain Name, then Google will have no obligation to provide Customer with GWS Services or Cloud Identity Services and may delete the Account without notice.

1.4 *Updates*.

(a) *To the Services*. Google may make commercially reasonable updates to the Services from time to time.

(b) *To this Agreement*. Subject to subsections (i) and (ii), Google may make updates to this Agreement from time to time. Google will post any update to this Agreement to https://cloud.google.com/terms/ (https://cloud.google.com/terms/). This subsection 1.4(b) does not apply to updates to the URL Terms, which are governed by subsection 1.4(c) below.

(i) With respect to GCP Services and their corresponding TSS, unless otherwise noted by Google, material updates to this Agreement will become effective 30 days after they are posted. Notwithstanding the preceding sentence, to the extent any updates apply to new functionality or are required to comply with applicable law, they will be effective immediately. If Customer does not agree to any update to the Agreement regarding GCP or its TSS, Customer may stop using the GCP Services or TSS. Customer may also terminate this Agreement for convenience under Section 8.5 (Termination for Convenience). Customer's continued use of the GCP Services or TSS after a material update will constitute Customer's consent to such update.

(ii) With respect to GWS Services, SecOpS Services, Looker (original) Services, and Cloud Identity Services, and their respective corresponding TSS, material updates to this Agreement will only take effect if and when Customer's Order Term renews.

(c) *To the URL Terms*. Google may make commercially reasonable updates to the URL Terms from time to time by posting any such update at the relevant URL Term. Unless otherwise noted by Google, material updates to the URL Terms will become effective 30 days after they are posted. Notwithstanding the preceding sentence, to the extent the updates apply to new functionality or the Cloud Data Processing Addendum, or are required by applicable law, they will be effective immediately.

(d) *To the Cloud Data Processing Addendum*. Without limiting the generality of Section 1.4(c), Google may only update the Cloud Data Processing Addendum where such update is required to comply with applicable law or expressly permitted by the Cloud Data Processing Addendum, or where such update:

(i) is commercially reasonable;

(ii) does not result in a material reduction of the security of the Services;

(iii) does not expand the scope of or remove any restrictions on Google's processing of "Customer Personal Data," as described in the "Compliance with Customer's Instructions" Section of the Cloud Data Processing Addendum; and

(iv) does not otherwise have a material adverse impact on Customer's rights under the Cloud Data Processing Addendum.

(e) *Discontinuation of Services*. Subject to the last sentence in this Section 1.4(e) (Discontinuation of Services), Google will notify Customer at least 12 months before: (i) discontinuing any Service (or associated material functionality) unless Google replaces such discontinued Service or functionality with a materially similar Service or functionality; or (ii) significantly modifying a Customer-facing Google API in a backwards-incompatible manner. Nothing in this Section 1.4(e) (Discontinuation of Services) limits Google's ability to make changes required to comply with applicable law, address a material security risk, or avoid a substantial economic or material technical burden. This Section 1.4(e) (Discontinuation of Services) does not apply to Cloud Identity Services or pre-general availability Services, offerings, or functionality and, for GWS Services, only applies to Core Services (and not Other Services).

1.5 *Software*. If Google makes Software available to Customer, including third-party software, Customer's use of any Software is subject to the applicable provisions in the Service Specific Terms.

## 2. Payment Terms.

2.1 *Billing*.

(a) *Billing Generally*.

Google will issue an electronic bill or invoice to Customer for all Fees, including, if applicable, Fees based on Customer's use of the Services during the applicable Fee

Accrual Period and any relevant Fees for TSS. If Google reasonably determines based on objective criteria and Google's policies that Customer poses a risk of non-payment, bad-faith dealing, or dishonesty, then, without limiting Google's other rights or remedies, Google may invoice or charge Customer more frequently or require Customer to purchase credits to use certain Services. Google may also, regardless of any such risk, require all customers to purchase credits to use certain Services. Any purchases of credits are subject to the "Paid Credit" section of the applicable Service Specific Terms (including, for GCP Services, the Supplemental Paid Credit Terms at https://cloud.google.com/terms/supplemental-paid-credit (https://cloud.google.com/terms/supplemental-paid-credit)). Customer will pay all Fees in the currency stated in the bill or invoice. If Customer pays by credit card, debit card, or other non-invoiced form of payment, Customer will pay all Fees immediately at the end of the Fee Accrual Period or when otherwise charged by Google. If Customer pays by invoice, Customer will pay Google all invoiced amounts by the Payment Due Date. For GCP Services, GWS Services, and Cloud Identity Services, Customer may change its payment method to any other method that Google may enable, subject to acceptance by Customer of any additional terms applicable to that payment method. Unless required by law, Customer's obligation to pay all Fees is non-cancellable. For GCP Services, GWS Services, Looker (original) Services, and Cloud Identity Services, Google's measurement tools will be used to determine Customer's usage of the Services. Google has no obligation to provide multiple bills. Payments made via wire transfer must include the bank information provided by Google.

(b) *Billing Options for GWS Services and Cloud Identity Services*. This subsection 2.1(b) applies only to GWS Services and Cloud Identity Services. Customer may elect one of the billing options below or any other option offered by Google when Customer places its order for the Services:

(i) *Flexible Plan*. If Customer selects this option, Customer will not be committed to purchase the Services for a pre-defined term, but will pay Fees based on its daily usage of the Services, billed monthly in arrears. Any partial day of Services usage will be rounded up to a full day of Services usage for the purposes of calculating Fees.

(ii) *Annual/Fixed-Term Plan*. If Customer selects this option, Customer will be committed to purchasing the Services for one or more annual terms (as selected by Customer). Google will bill Customer according to the terms associated with Customer's elections on the Order Form.

Google may change its offering of billing options (including by limiting or ceasing to offer any billing option) upon 30 days' notice to Customer and any such change will take effect at the beginning of Customer's next Order Term. Billing options may not be available to all customers.

2.2 *Taxes.*

(a) Customer is responsible for any Taxes, and will pay Google for the Services without any reduction for Taxes. If Google is obligated to collect or pay any Taxes, the Taxes will be invoiced to Customer and Customer will pay such Taxes to Google, unless Customer provides Google with a timely and valid tax exemption certificate in respect of those Taxes.

(b) Customer will provide Google with any applicable tax identification information that Google may require under applicable law to ensure its compliance with applicable tax regulations and authorities in applicable jurisdictions. Customer will be liable to pay (or reimburse Google for) any taxes, interest, penalties, or fines arising out of any mis-declaration by Customer.

2.3 *Payment Disputes & Refunds.* Any payment disputes must be submitted in good faith before the Payment Due Date. If Google, having reviewed the dispute in good faith, determines that certain billing inaccuracies are attributable to Google, Google will not issue a corrected invoice, but will instead issue a credit memo specifying the incorrect amount in the affected invoice. If a disputed invoice has not yet been paid, Google will apply the credit memo amount to a disputed invoice and Customer will be responsible for paying the resulting net balance due on that invoice. Refunds given by Google for billing inaccuracies under this Section will only be in the form of credit for the Services. Nothing in this Agreement obligates Google to extend credit to any party, and Google may revise or revoke any previously-extended credit at any time.

2.4 *Delinquent Payments; Suspension.* Late payments (which, for clarity, do not include amounts subject to a good faith payment dispute submitted before the Payment Due Date), may bear interest at the rate of 1.5% per month (or the highest rate permitted by law, if less) from the Payment Due Date until paid in full. Customer will be responsible for all reasonable expenses (including attorneys' fees) incurred by Google in collecting such delinquent amounts. Further, in the event of any late payment for the Services, Google may Suspend the Services.

2.5 *No Purchase Order Number Required.* Customer is obligated to pay all applicable Fees without any requirement for Google to provide a purchase order number on Google's

invoice (or otherwise).

2.6 *Fee Revisions*. Google may change the Fees at any time unless otherwise expressly agreed in an addendum or Order Form. For GWS Services, Looker (original) Services, and Cloud Identity Services only, (a) Google will notify Customer at least 30 days in advance of any changes, and (b) Customer's pricing will change if and when Customer's Order Term renews after the 30-day period. If Customer objects to any change in Fees, Customer may terminate this Agreement for convenience under Section 8.5 (Termination for Convenience).

### 3. Customer Obligations.

3.1 *Compliance*. Customer will (a) ensure that Customer and its End Users' use of the Services complies with this Agreement, (b) use commercially reasonable efforts to prevent and terminate any unauthorized use of, or access to, the Services, and (c) promptly notify Google of any unauthorized use of, or access to, the Services, Account, or Customer's password of which Customer becomes aware. Google reserves the right to investigate any potential violation of the AUP by Customer, which may include reviewing Customer Applications, Customer Data, or Projects.

3.2 *Privacy*. Customer is responsible for any consents and notices required to permit (a) Customer's use and receipt of the Services and (b) Google's accessing, storing, and processing of data provided by Customer (including Customer Data, if applicable) under this Agreement.

3.3 *Restrictions*. Customer will not, and will not allow End Users to, (a) copy, modify, or create a derivative work of the Services; (b) reverse engineer, decompile, translate, disassemble, or otherwise attempt to extract any or all of the source code of, the Services (except to the extent such restriction is expressly prohibited by applicable law); (c) sell, resell, sublicense, transfer, or distribute any or all of the Services; or (d) access or use the Services (i) for High Risk Activities; (ii) in violation of the AUP; (iii) in a manner intended to avoid incurring Fees (including creating multiple Customer Applications, Accounts, or Projects to simulate or act as a single Customer Application, Account, or Project (respectively)) or to circumvent Service-specific usage limits or quotas; (iv) to engage in cryptocurrency mining without Google's prior written approval; (v) to operate or enable any telecommunications service or in connection with any Customer Application that allows End Users to place calls or to receive calls from any public switched telephone network, unless otherwise described in the Service Specific Terms; (vi) to place or receive emergency service calls via the GWS Services, unless stated otherwise in the Service Specific Terms; (vii) for materials or activities that are subject to the International Traffic in Arms

Regulations (ITAR) maintained by the United States Department of State; (viii) in a manner that breaches, or causes the breach of, Export Control Laws; or (ix) to transmit, store, or process health information subject to United States HIPAA regulations except as permitted by an executed HIPAA BAA.

3.4 *Documentation*. Google may provide Documentation for Customer's use of the Services.

3.5 *Copyright*. Google responds to notices of alleged copyright infringement and terminates the Accounts of repeat infringers in appropriate circumstances as required to maintain safe harbor for online service providers under the U.S. Digital Millennium Copyright Act.

3.6 *Third-Party Content Enforcement (for GCP Services)*. If Customer's primary use of the GCP Services is to host third-party content or facilitate the sale of goods or services between third parties on its platform, Customer will take the following steps to enforce compliance with the AUP: (a) publish policies defining what content is prohibited on its platform (e.g., illegal content); (b) maintain a publicly accessible method (e.g., webform or email alias) to receive notices of violation of that policy (in addition to a monitored communications channel for Google); and (c) promptly review and address any such notices, and remove content where appropriate.

3.7 *Additional Terms for GWS Services and Cloud Identity Services*. The following terms apply only to GWS Services and Cloud Identity Services:

(a) *Additional Products and Third-Party Offerings*. Optional Additional Products and Third-Party Offerings may be available for use in conjunction with the Services, and may be enabled or disabled through the Admin Console. Any use of Additional Products is subject to the Additional Product Terms, which are incorporated by reference into the Agreement and which may be updated by Google from time to time. Any use of Third-Party Offerings is subject to separate terms and policies with the relevant service provider.

(b) *Administration of GWS Services and Cloud Identity Services*. Customer may specify through the Admin Console one or more Administrators who will have the right to access Admin Accounts. Customer is responsible for (i) maintaining the confidentiality and security of the End User Accounts and associated passwords and (ii) any use of the End User Accounts. Customer agrees that Google’s responsibilities do not extend to the internal management or administration of the GWS Services or Cloud Identity Services for Customer or any End Users.

(c) *Abuse Monitoring*. Customer is solely responsible for monitoring, responding to, and otherwise processing emails sent to the "abuse" and "postmaster" aliases for Customer Domain Names, but Google may monitor emails sent to these aliases to allow Google to identify GWS Services or Cloud Identity Services abuse.

(d) *Requesting Additional End User Accounts During Order Term*. Customer may purchase additional End User Accounts during an Order Term by means of an additional Order Form or Reseller Order or by ordering via the Admin Console. Such additional End User Accounts will have a pro-rated term ending on the last day of the applicable Order Term.

**4. Suspension.**

4.1 *AUP Violations*. If Google becomes aware that Customer's or any End User's use of the Services violates the AUP, Google will notify Customer and request that Customer correct the violation. If Customer fails to correct the violation within 24 hours of Google's request, then Google may Suspend all or part of Customer's use of the Services until the violation is corrected. For GWS Services, Suspension of the Services may include removal or unsharing of content that violates the AUP.

4.2 *Other Suspension*. Notwithstanding Section 4.1 (AUP Violations), Google may immediately Suspend all or part of Customer's use of the Services if (a) Google reasonably believes Suspension is needed to protect the Services, Google's infrastructure supporting the Services, or any other customer of the Services (or their end users); (b) there is suspected unauthorized third-party access to the Services; (c) Google reasonably believes that immediate Suspension is required to comply with any applicable law; or (d) Customer is in breach of Section 3.3 (Restrictions) or the Service Specific Terms. Google will lift any such Suspension when the circumstances giving rise to the Suspension have been resolved. At Customer's request, Google will, unless prohibited by applicable law, notify Customer of the basis for the Suspension as soon as is reasonably possible. For Suspension of End User Accounts for GWS Services or Cloud Identity Services, Google will provide Customer's Administrator the ability to restore End User Accounts in certain circumstances.

4.3 *Generative AI Safety and Abuse for GCP Services*. Google uses automated safety tools to detect abuse of Generative AI Services. Notwithstanding the "Handling of Prompts and Generated Output" section in the Service Specific Terms for GCP Services, if these tools detect potential abuse or violations of Google's AUP (https://cloud.google.com/terms/aup) or Prohibited Use Policy (https://policies.google.com/terms/generative-ai/use-policy), Google may log Customer prompts solely for the purpose of reviewing and determining whether a violation

has occurred. See the Abuse Monitoring (https://cloud.google.com/vertex-ai/generative-ai/docs/learn/abuse-monitoring) documentation page for more information about how logging prompts impacts Customer's use of the GCP Services.

**5. Intellectual Property Rights; Protection of Customer Data; Feedback; Using Brand Features within the GWS Services or Cloud Identity Services.**

5.1 *Intellectual Property Rights*. Except as expressly stated in this Agreement, this Agreement does not grant either party any rights, implied or otherwise, to the other's content or any of the other's intellectual property. As between the parties, Customer retains all Intellectual Property Rights in Customer Data and Customer Applications, and Google retains all Intellectual Property Rights in the Services and Software.

5.2 *Protection of Customer Data*. Google will only access, use, and otherwise process Customer Data in accordance with the Cloud Data Processing Addendum and will not access, use, or process Customer Data for any other purpose. Google has implemented and will maintain technical, organizational, and physical measures to protect Customer Data, as further described in the Cloud Data Processing Addendum. If you are accessing the Services as a customer of an unaffiliated Google Cloud reseller, this Section 5.2 (Protection of Customer Data) is subject to the "Resold Customers" section of the applicable Service Specific Terms.

5.3 *Customer Feedback*. At its option, Customer may provide feedback or suggestions about the Services to Google ("Feedback"). If Customer provides Feedback, then Google and its Affiliates may use that Feedback without restriction and without obligation to Customer.

5.4 *Using Brand Features Within the GWS Services or Cloud Identity Services*. Google will display within the GWS Services or Cloud Identity Services only those Customer Brand Features that Customer authorizes by uploading them into the GWS Services or Cloud Identity Services. Google will display those Customer Brand Features within designated areas of the web pages displaying the Services to Customer or its End Users. Customer may specify details of this use in the Admin Console. Google may also display Google Brand Features on such web pages to indicate that the GWS Services or Cloud Identity Services are provided by Google.

**6. Technical Support Services.**

6.1 *By Customer*. Customer is responsible for technical support of its Customer Applications and Projects.

6.2 *By Google*. Subject to payment of applicable support Fees, Google will provide TSS to Customer during the Term in accordance with the TSS Guidelines. Certain TSS levels include a minimum recurring Fee as described at (a) for GCP Services, SecOps Services, and Looker (original) Services, https://cloud.google.com/skus (https://cloud.google.com/skus), and (b) for GWS Services, at https://workspace.google.com/terms/tssg.html (https://workspace.google.com/terms/tssg.html). If Customer downgrades its TSS level during any calendar month, Google may continue to provide TSS at the same level and for the same TSS Fees as applied before the downgrade for the remainder of that month.

## 7. Confidential Information.

7.1 *Obligations*. The recipient will only use the disclosing party's Confidential Information to exercise the recipient's rights and fulfill its obligations under this Agreement, and will use reasonable care to protect against the disclosure of the disclosing party's Confidential Information. The recipient may disclose Confidential Information only to its and its Affiliates' employees, agents, subcontractors, or professional advisors ("Delegates") who need to know it and who have agreed in writing (or in the case of professional advisors are otherwise bound) to keep it confidential. The recipient will ensure that its Delegates use the received Confidential Information only to exercise rights and fulfill obligations under this Agreement.

7.2 *Required Disclosure*. Notwithstanding any provision to the contrary in this Agreement, the recipient or its Affiliate may also disclose Confidential Information to the extent required by applicable Legal Process; provided that the recipient or its Affiliate uses commercially reasonable efforts to (a) promptly notify the other party before any such disclosure of its Confidential Information, and (b) comply with the other party's reasonable requests regarding its efforts to oppose the disclosure. Notwithstanding the foregoing, subsections (a) and (b) above will not apply if the recipient determines that complying with (a) and (b) could (i) result in a violation of Legal Process; (ii) obstruct a governmental investigation; or (iii) lead to death or serious physical harm to an individual.

## 8. Term and Termination.

8.1 *Agreement Term*. The term of this Agreement (the "Term") will begin on the Effective Date and continue until this Agreement is terminated as stated in this Section 8 (Term and Termination).

8.2 *GWS Services or Cloud Identity Services Renewal*. The following terms apply only to renewals of GWS Services or Cloud Identity Services:

(a) *With a Flexible Plan*. Order Terms for the Flexible Plan are monthly. At the end of each month, the Order Term will automatically renew for another month, unless canceled by Customer via the Admin Console.

(b) *With an Annual/Fixed-Term Plan*. At the end of each Order Term for an Annual/Fixed-Term Plan, the GWS Services or Cloud Identity Services will renew consistent with Customer's elections in the Order Form or Admin Console.

(c) *Generally*. Customer may use the Admin Console to adjust the number of End User Accounts to be renewed. Customer will continue to pay Google the then-current Fees for each renewed End User Account unless Customer and Google mutually agree otherwise. If either party does not want the GWS Services or Cloud Identity Services to renew, then it must notify the other party to this effect at least 15 days before the end of the then-current Order Term, and this notice of non-renewal will take effect at the end of the then-current Order Term.

8.3 *Termination for Breach*.

(a) *Termination of an Order Form*. Either party may terminate an Order Form if the other party is in material breach of this Agreement and fails to cure that breach within 30 days after receipt of written notice.

(b) *Termination of this Agreement*. To the extent permitted by applicable law, either party may terminate this Agreement immediately on written notice if the other party is in material breach of this Agreement and fails to cure that breach within 30 days after receipt of written notice of the breach.

8.4 *Termination for GCP Services Inactivity*. Google reserves the right to terminate the provision of GCP Services to a Project upon 30 days' advance notice if, for a period of 60 days (a) Customer has not accessed the Admin Console or the Project has had no network activity and (b) such Project has not incurred any Fees for such Services.

8.5 *Termination for Convenience*. Customer may stop using the Services at any time. Subject to any financial commitments in an Order Form or addendum to this Agreement, Customer may terminate this Agreement for its convenience at any time on prior written notice and, upon termination, must cease use of the applicable Services. For purposes of GCP Services and TSS only, Google may terminate this Agreement or any applicable Order

Form for its convenience at any time with 30 days' prior written notice to Customer. For the avoidance of doubt, any termination of this Agreement by Google for its convenience pursuant to the preceding sentence will not impact any active GWS Services, SecOps Services, Looker (original) Services, or Cloud Identity Services Order Forms, and this Agreement will continue to govern such GWS Services, SecOps Services, Looker (original) Services, or Cloud Identity Services Order Forms, as applicable, until their expiration or termination pursuant to this Agreement.

8.6 *Termination Due to Applicable Law; Violation of Laws*. Google may terminate this Agreement immediately on written notice if Google reasonably believes that (a) continued provision of any Service used by Customer would violate applicable law(s) or (b) Customer has violated or caused Google to violate any Anti-Bribery Laws or Export Control Laws.

8.7 *Effect of Termination or Non-Renewal*. Subject to the last sentence of Section 8.5 (Termination for Convenience), if this Agreement terminates, then all Order Forms also terminate. If this Agreement or an Order Form is terminated or not renewed, then (a) all rights and access to the Services (or in the case of termination of an Order Form, the applicable Services) will terminate (including access to Customer Data, if applicable), unless otherwise described in this Agreement or the Order Form, and (b) all Fees owed by Customer to Google under this Agreement or Order Form, as applicable, are immediately due upon Customer’s receipt of the final electronic bill or as stated in the final invoice.

8.8 *No Refunds*. Unless expressly stated otherwise in this Agreement or required by law, termination or non-renewal under any section of this Agreement (including the Cloud Data Processing Addendum or any Order Form) will not oblige Google to refund any Fees.

**9. Publicity.** Neither party may use the other party’s Brand Features or issue, publish, or present a press release, blog post, speech, social media post, or investor relations call or announcement discussing Customer’s use of the Services or this Agreement without the written consent of the other party, except as expressly permitted in this Agreement. Subject to the preceding sentence, Customer may state publicly that it is a Google Cloud customer and display Brand Features in accordance with the Branding Guidelines. Google may use Customer's name and Brand Features in online or offline promotional materials of the Services. Any use of a party’s Brand Features will inure to the benefit of the party holding Intellectual Property Rights to those Brand Features.

**10. Representations and Warranties.** Each party represents and warrants that (a) it has full power and authority to enter into this Agreement, and (b) it will comply with all laws applicable to its provision, receipt, or use of the Services, as applicable.

11. Disclaimer. Except as expressly provided for in this Agreement, Google does not make and expressly disclaims to the fullest extent permitted by applicable law (a) any warranties of any kind, whether express, implied, statutory, or otherwise, including warranties of merchantability, fitness for a particular use, title, noninfringement, or error-free or uninterrupted use of the Services or Software; and (b) any representations about content or information accessible through the Services.

12. Limitation of Liability.

12.1 *Limitation on Indirect Liability.* To the extent permitted by applicable law and subject to Section 12.3 (Unlimited Liabilities), neither party will have any Liability arising out of or relating to this Agreement for any (a) indirect, consequential, special, incidental, or punitive damages or (b) lost revenues, profits, savings, or goodwill.

12.2 *Limitation on Amount of Liability.* Each party's total aggregate Liability for damages arising out of or relating to this Agreement in connection with the GCP Services, GWS Services, SecOps Services, Looker (original) Services, or Cloud Identity Services, as applicable, is limited to the Fees Customer paid for such Services during the 12 month period before the event giving rise to Liability, except Google's total aggregate Liability for damages arising out of or related to Services or Software provided free of charge is limited to $5,000.

12.3 *Unlimited Liabilities.* Nothing in this Agreement excludes or limits either party's Liability for:

(a) its fraud or fraudulent misrepresentation;

(b) its obligations under Section 13 (Indemnification);

(c) its infringement of the other party's Intellectual Property Rights;

(d) its payment obligations under this Agreement; or

(e) matters for which liability cannot be excluded or limited under applicable law.

13. Indemnification.

13.1 *Google Indemnification Obligations*. Google will defend Customer and its Affiliates using the Services under Customer’s Account and indemnify them against Indemnified Liabilities in any Third-Party Legal Proceeding to the extent arising from an allegation that any Service or any Google Brand Feature, in each case used in accordance with this Agreement, infringes the third party's Intellectual Property Rights.

13.2 *Customer Indemnification Obligations*. Customer will defend Google and its Affiliates providing the Services and indemnify them against Indemnified Liabilities in any Third-Party Legal Proceeding to the extent arising from (a) any Customer Application, Project, Customer Data, or Customer Brand Features; or (b) Customer's or an End User's use of the Services in breach of the AUP or Section 3.3 (Restrictions).

13.3 *Exclusions*. Sections 13.1 (Google Indemnification Obligations) and 13.2 (Customer Indemnification Obligations) will not apply to the extent the underlying allegation arises from (a) the indemnified party's breach of this Agreement, (b) a combination of the indemnifying party's technology or Brand Features with materials not provided by the indemnifying party under this Agreement, unless the combination is required by this Agreement, or (c) in the case of Google or any of its Affiliates as the indemnifying party, any Services provided to Customer free of charge.

13.4 *Conditions*. Sections 13.1 (Google Indemnification Obligations) and 13.2 (Customer Indemnification Obligations) are conditioned on the following:

(a) Any indemnified party must promptly notify the indemnifying party in writing of any allegation(s) that preceded the Third-Party Legal Proceeding and cooperate reasonably with the indemnifying party to resolve the allegation(s) and Third-Party Legal Proceeding. If breach of this Section 13.4(a) prejudices the defense of the Third-Party Legal Proceeding, the indemnifying party's obligations under Section 13.1 (Google Indemnification Obligations) or 13.2 (Customer Indemnification Obligations) (as applicable) will be reduced in proportion to the prejudice.

(b) Any indemnified party must tender sole control of the indemnified portion of the Third-Party Legal Proceeding to the indemnifying party, subject to the following: (i) the indemnified party may appoint its own non-controlling counsel, at its own expense; and (ii) any settlement requiring the indemnified party to admit liability, pay money, or take (or refrain from taking) any action, will require the indemnified party's prior written consent, not to be unreasonably withheld, conditioned, or delayed.

13.5 *Remedies*.

(a) If Google reasonably believes the Services might infringe a third party's Intellectual Property Rights, then Google may, at its sole option and expense (i) procure the right for Customer to continue using the Services; (ii) modify the Services to make them non-infringing without materially reducing their functionality; or (iii) replace the Services with a non-infringing alternative that has materially equivalent functionality.

(b) If Google does not believe the remedies in Section 13.5(a) are commercially reasonable, then Google may Suspend or terminate Customer's use of the impacted Services. If Google terminates the impacted Services, then upon Customer request Google will refund to Customer any unused prepaid Fees that Customer paid to Google for use of the terminated Services.

13.6 *Sole Rights and Obligations*. Without affecting either party's termination rights and to the extent permitted by applicable law, this Section 13 (Indemnification) states the parties' sole and exclusive remedy under this Agreement for any third-party allegations of Intellectual Property Rights infringement covered by this Section 13 (Indemnification).

**14. Miscellaneous.**

14.1 *Notices*. Under this Agreement, notices to Customer must be sent to the Notification Email Address and notices to Google must be sent to legal-notices@google.com (mailto:legal-notices@google.com). Notice will be treated as received when the email is sent. Customer is responsible for keeping its Notification Email Address current throughout the Term.

14.2 *Emails*. The parties may use emails to satisfy written approval and consent requirements under this Agreement.

14.3 *Assignment*. Neither party may assign any part of this Agreement without the written consent of the other, except to an Affiliate where (a) the assignee has agreed in writing to be bound by the terms of this Agreement, and (b) the assigning party has notified the other party of the assignment. Any other attempt to assign is void. If Customer assigns this Agreement to an Affiliate in another jurisdiction such that there is a change in the Google contracting entity as defined at https://cloud.google.com/terms/google-entity (https://cloud.google.com/terms/google-entity) this Agreement is automatically assigned to the new Google contracting entity.

14.4 *Change of Control*. If a party experiences a change of Control other than as part of an internal restructuring or reorganization (for example, through a stock purchase or sale,

merger, or other form of corporate transaction), that party will give written notice to the other party within 30 days after the change of Control.

14.5 *Force Majeure*. Neither party will be liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control, including acts of God, natural disasters, terrorism, riots, or war.

14.6 *Subcontracting*. Google may subcontract obligations under this Agreement but will remain liable to Customer for any subcontracted obligations.

14.7 *No Agency*. This Agreement does not create any agency, partnership, or joint venture between the parties.

14.8 *No Waiver*. Neither party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.

14.9 *Severability*. If any part of this Agreement is invalid, illegal, or unenforceable, the rest of this Agreement will remain in effect.

14.10 *No Third-Party Beneficiaries*. This Agreement does not confer any benefits on any third party unless it expressly states that it does.

14.11 *Equitable Relief*. Nothing in this Agreement will limit either party's ability to seek equitable relief.

14.12 *U.S. Governing Law*.

(a) *For U.S. City, County, and State Government Entities*. If Customer is a U.S. city, county, or state government entity, then this Agreement will be silent regarding governing law and venue.

(b) *For U.S. Federal Government Entities*. If Customer is a U.S. federal government entity, then the following applies: ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES WILL BE GOVERNED BY THE LAWS OF THE UNITED STATES OF AMERICA, EXCLUDING ITS CONFLICT OF LAWS RULES. SOLELY TO THE EXTENT PERMITTED BY FEDERAL LAW, (I) THE LAWS OF THE STATE OF CALIFORNIA (EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES) WILL APPLY IN THE ABSENCE OF APPLICABLE FEDERAL LAW; AND (II) FOR ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES, THE PARTIES CONSENT TO PERSONAL JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE COURTS IN SANTA CLARA COUNTY, CALIFORNIA.

(c) *For All Other Entities*. If Customer is any entity not identified in Section 14.12(a) (U.S. Governing Law for U.S. City, County, and State Government Entities) or (b) (U.S. Governing Law for Federal Government Entities), then the following applies: ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING THAT STATE'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

14.13 *Amendments*. Except as stated in Sections 1.4(b) (Updates: To this Agreement); 1.4(c) (Updates: To the URL Terms) or (d) (Updates: To the Cloud Data Processing Addendum), any amendment must be in writing, signed by both parties, and expressly state that it is amending this Agreement.

14.14 *Survival*. The following Sections will survive expiration or termination of this Agreement: Section 2 (Payment Terms), Section 5 (Intellectual Property Rights; Protection of Customer Data; Feedback; Using Brand Features within the GWS Services or Cloud Identity Services), Section 7 (Confidential Information), Section 8.7 (Effect of Termination or Non-Renewal), Section 11 (Disclaimer), Section 12 (Limitation of Liability), Section 13 (Indemnification), and Section 14 (Miscellaneous).

14.15 *Entire Agreement*. This Agreement sets out all terms agreed between the parties and supersedes all other agreements between the parties relating to its subject matter. In entering into this Agreement, neither party has relied on, and neither party will have any right or remedy based on, any statement, representation, or warranty (whether made negligently or innocently), except those expressly stated in this Agreement. The URL Terms are incorporated by reference into this Agreement. After the Effective Date, Google may provide an updated URL in place of any URL in this Agreement.

14.16 *Conflicting Terms*. If there is a conflict between the documents that make up this Agreement, the documents will control in the following order (of decreasing precedence): the Cloud Data Processing Addendum, any applicable Order Form, the remainder of this Agreement (excluding the URL Terms), and the URL Terms (excluding the Cloud Data Processing Addendum).

14.17 *Headers*. Headings and captions used in this Agreement are for reference purposes only and will not have any effect on the interpretation of this Agreement.

14.18 *Conflicting Languages*. If this Agreement is translated into any language other than English, and there is a discrepancy between the English text and the translated text, the

English text will govern unless expressly stated otherwise in the translation. Unless otherwise specified, all references to "$" in this Agreement refer to United States dollars.

14.19 *Definitions.*

- "Account" means Customer's Google Cloud Platform, GWS Services, SecOps Services, Looker (original) Services, or Cloud Identity Services account, as applicable.
- "Additional Products" means products, services, or applications offered by Google or its Affiliates that are not incorporated into the GWS Services or Cloud Identity Services but that may be accessible for use in conjunction with the GWS Services or Cloud Identity Services.
- "Additional Product Terms" means, for GWS Services and Cloud Identity Services only, the then-current terms stated at https://workspace.google.com/terms/additional_services (https://workspace.google.com/terms/additional_services).
- "Admin Account" means a type of End User Account that Customer (or Reseller, if applicable) may use to administer the GWS Services or Cloud Identity Services, as applicable.
- "Admin Console" means the online console(s) or dashboard provided by Google to Customer for administering the applicable Services.
- "Administrators" means the Customer-designated personnel who administer the GWS Services or Cloud Identity Services, as applicable, to End Users on Customer's behalf, and have the ability to access Customer Data and End User Accounts. Such access includes the ability to access, monitor, use, modify, withhold, or disclose any data available to End Users associated with their End User Accounts.
- "Affiliate" means any entity that directly or indirectly Controls, is Controlled by, or is under common Control with a party.
- "Anti-Bribery Laws" means all applicable commercial and public anti-bribery laws, including the U.S. Foreign Corrupt Practices Act of 1977 and the UK Bribery Act 2010, that prohibit corrupt offers of anything of value, either directly or indirectly, to anyone, including government officials, to obtain or keep business or to secure any other improper commercial advantage. Government officials

include: any government employees, candidates for public office, members of royal families, and employees of government-owned or government-controlled companies, public international organizations, and political parties.

- "AUP" means the then-current acceptable use policy for the Services stated at https://cloud.google.com/terms/aup (https://cloud.google.com/terms/aup).
- "BAA" or "Business Associate Agreement" is an amendment to this Agreement covering the handling of Protected Health Information (as defined in HIPAA).
- "Brand Features" means the trade names, trademarks, service marks, logos, domain names, and other distinctive brand features of each party, respectively, as secured by such party from time to time.
- "Branding Guidelines" means Google's then-current Google branding guidelines at https://services.google.com/fh/files/misc/external_customer_co_branding_eligibility.pdf (https://services.google.com/fh/files/misc/external_customer_co_branding_eligibility.pdf), as may be updated by Google from time to time.
- "Cloud Data Processing Addendum" means the then-current terms describing data processing and security obligations with respect to Customer Data, as described at https://cloud.google.com/terms/data-processing-addendum (/terms/data-processing-addendum).
- "Cloud Identity Services" means the then-current services described at https://cloud.google.com/terms/identity/user-features.html (/terms/identity/user-features), when purchased on a standalone basis (and not as a GCP Service or GWS Service).
- "Confidential Information" means information that one party (or an Affiliate) discloses to the other party under or in connection with this Agreement, and which is marked as confidential or would normally under the circumstances be considered confidential information. It does not include information that is independently developed by the recipient, is rightfully given to the recipient by a third party without confidentiality obligations, or becomes public through no fault of the recipient. Subject to the preceding sentence, Customer Data is considered Customer's Confidential Information.

- "Control" means control of greater than 50 percent of the voting rights or equity interests of a party.
- "Core Services" means, for GWS Services only, the then-current "Core Services" as described at https://workspace.google.com/intl/en/terms/user_features/ (https://workspace.google.com/intl/en/terms/user_features/), excluding any Third-Party Offerings.
- "Customer Application" means a software program that Customer creates or hosts using the GCP Services or Looker (original) Services, as applicable.
- "Customer Data" means (a) for GCP Services, Looker (original) Services, and SecOps Services, data provided to Google by Customer or End Users through the Services under the Account, and data that Customer or End Users derive from that data through their use of the Services; and (b) for GWS Services or Cloud Identity Services, data submitted, stored, sent or received via the Services by Customer or its End Users.
- "Documentation" means the Google documentation (as may be updated from time to time) in the form generally made available by Google to its customers for use with the Services, including at https://cloud.google.com/docs/ (https://cloud.google.com/docs) and any Looker (original) user guides and manuals Google provides Customer for its internal use.
- "Domain Email Address" means the email address on the Domain Name for use in connection with the GWS Services or Cloud Identity Services, as applicable.
- "Domain Name" means the domain name specified in the Order Form to be used in connection with the GWS Services or Cloud Identity Services, as applicable.
- "End Users" means the individuals who are permitted by Customer to use the Services. For clarity, End Users may include employees of Customer Affiliates and other authorized third parties.
- "End User Account" means a Google-hosted account established by Customer through the GWS Services or Cloud Identity Services in order for an End User to use the GWS Services or Cloud Identity Services.
- "Export Control Laws" means all applicable export and re-export control laws and regulations, including (a) the Export Administration Regulations ("EAR") maintained by the U.S. Department of Commerce, (b) trade and economic

sanctions maintained by the U.S. Treasury Department's Office of Foreign Assets Control, and (c) the International Traffic in Arms Regulations ("ITAR") maintained by the U.S. Department of State.

- "Fee Accrual Period" means (a) a calendar month or other period or billing frequency (b) for GCP Services only, a period in which Customer reaches a designated spend threshold, in each case specified by Google in the Admin Console or in an Order Form.

- "Fees" means the applicable fees for each Service, Software, TSS, and Third-Party Offerings, plus any applicable Taxes. The Fees for each (a) GCP Service are stated at https://cloud.google.com/skus/ (https://cloud.google.com/skus), (b) GWS Service are stated at https://workspace.google.com/pricing.html (https://workspace.google.com/pricing.html), and (c) Cloud Identity Service are stated at https://support.google.com/cloudidentity/answer/7666159 (https://support.google.com/cloudidentity/answer/7666159) (in each case, incorporated into this Agreement by this reference). The Fees for SecOps Services and Looker (original) Services are stated in an Order Form or amendment to this Agreement.

- "GCP Services" or "Google Cloud Platform Services" means the then-current services described at https://cloud.google.com/terms/services (https://cloud.google.com/terms/services).

- "Google API" means any application programming interface provided by Google as part of the Services.

- "GWS Services" or "Google Workspace Services" means the then-current Core Services and Other Services. For the avoidance of doubt, GWS Services do not include Google Workspace for Education, which is not governed by this Agreement.

- "High Risk Activities" means activities where the use or failure of the Services would reasonably be expected to lead to death, personal injury, or environmental or property damage (such as the creation or operation of nuclear facilities, air traffic control, life support systems, or weaponry).

- "HIPAA" means the Health Insurance Portability and Accountability Act of 1996 as it may be amended from time to time, and any regulations issued under it.

- "including" means including but not limited to.
- "Indemnified Liabilities" means any (i) settlement amounts approved by the indemnifying party, and (ii) damages and costs finally awarded against the indemnified party by a court of competent jurisdiction.
- "Intellectual Property Rights" means current and future worldwide rights under patent, copyright, trade secret, trademark, and moral rights laws, and other similar rights.
- "Legal Process" means an information disclosure request made under law, governmental regulation, court order, subpoena, warrant, or other valid legal authority, legal procedure, or similar process.
- "Liability" means any liability, whether under contract, tort (including negligence), or otherwise, regardless of whether foreseeable or contemplated by the parties.
- "Looker (original) Services" means the integrated business intelligence and embedded analytics platform (including the software components that connect to APIs) provided as either a deployment hosted by Google or a deployment hosted by Customer, as specified in the applicable Order Form. For clarity, Looker Studio and Looker (Google Cloud core) are GCP Services and are not Looker (original) Services.
- "Notification Email Address" means the email address(es) designated by Customer in the Admin Console, or if none exists, the applicable Order Form.
- "Order Form" means (a) an order form, statement of work, or other ordering document issued by Google under this Agreement and executed by Customer and Google; or (b) an order placed by Customer via a Google website or the Services, in each case specifying the Services Google will provide to Customer.
- "Order Term" means the period of time starting on the Services Start Date for the Services and continuing for the period indicated on the Order Form unless terminated in accordance with this Agreement.
- "Other Services" means, for GWS Services only, the then-current "Other Services" as described at https://workspace.google.com/intl/en/terms/user_features/

(https://workspace.google.com/intl/en/terms/user_features/), excluding any Third-Party Offerings.

- "Payment Due Date" means the payment due date set out in the applicable Order Form, or if not specified, 30 days from the invoice date.
- "Project" means, as applicable:
  (i) a collection of Google Cloud Platform resources configured by Customer via the GCP Services; or

  (ii) an instance of the SecOps Services configured and used by Customer.
- "SecOps Services" means the then-current services described at https://cloud.google.com/terms/secops/services (https://cloud.google.com/terms/secops/services).
- "Service Specific Terms" means, as applicable:
  (i) For GCP Services, the then-current terms specific to one or more Services stated at cloud.google.com/terms/service-terms (https://cloud.google.com/terms/service-terms);

  (ii) For GWS Services, the then-current terms specific to one or more services stated at https://workspace.google.com/terms/service-terms/ (https://workspace.google.com/terms/service-terms/);

  (iii) For SecOps Services, the then-current terms specific to one or more Services stated at https://cloud.google.com/terms/secops/service-terms (https://cloud.google.com/terms/secops/service-terms);

  (iv) For Looker (original) Services, the then-current terms specific to one or more Services stated at https://cloud.google.com/terms/looker/legal/customers/service-terms (https://cloud.google.com/terms/looker/legal/customers/service-terms); and

  (v) For Cloud Identity Services, then-current terms specific to one or more Services stated at https://cloud.google.com/terms/identity/service-terms (https://cloud.google.com/terms/identity/service-terms).
- "Services" means the GCP Services, GWS Services, SecOps Services, Looker (original) Services, or Cloud Identity Services, as applicable. In each case, Services exclude any Third-Party Offerings.

- "Services Start Date" means either the start date described in the Order Form or, in the absence of any such date, the date Google makes the Services available to Customer.
- "SLA" means, as applicable:
  (i) For GCP Services, each of the then-current service level agreements at https://cloud.google.com/terms/sla (https://cloud.google.com/terms/sla);

  (ii) For GWS Services, the then-current service level agreement at https://workspace.google.com/terms/sla/ (https://workspace.google.com/terms/sla/);

  (iii) For SecOps Services, each of the then-current service level agreements at https://cloud.google.com/terms/secops/sla (https://cloud.google.com/terms/secops/sla);

  (iv) For Looker (original) Services, each of the then-current service level agreements at https://cloud.google.com/terms/looker/legal/customers/sla (https://cloud.google.com/terms/looker/legal/customers/sla); and

  (v) For Cloud Identity Services, the then-current service level agreement at https://cloud.google.com/terms/identity/sla (https://cloud.google.com/terms/identity/sla).
- "Software" means any downloadable tools, software development kits, or other such computer software provided by Google in connection with the applicable Services, and any updates Google may make to such Software from time to time, excluding any Third-Party Offerings.
- "Suspend" or "Suspension" means disabling or limiting access to or use of the Services or components of the Services.
- "Taxes" means all government-imposed taxes, except for taxes based on Google's net income, net worth, asset value, property value, or employment.
- "Term" has the meaning stated in Section 8.1 (Agreement Term) of this Agreement.
- "Third-Party Offerings" means (a) third-party services, software, products, and other offerings that are not incorporated into the Services or Software, (b)

offerings identified in the "Third-Party Terms" section of the applicable Service Specific Terms, and (c) third-party operating systems.

- "Third-Party Legal Proceeding" means any formal legal proceeding filed by an unaffiliated third party before a court or government tribunal (including any appellate proceeding).

- "TSS" means the then-current technical support service provided by Google to Customer under the TSS Guidelines.

- "TSS Guidelines" means Google's technical support services guidelines then in effect for the Services. TSS Guidelines are available at, as applicable:

  (i) For GCP Services, SecOps Services, and Looker (original) Services, https://cloud.google.com/terms/tssg/ (https://cloud.google.com/terms/tssg/);

  (ii) For GWS Services, https://workspace.google.com/terms/tssg.html (https://workspace.google.com/terms/tssg.html); and

  (iii) For Cloud Identity Services, https://cloud.google.com/terms/identity/tssg.html (https://cloud.google.com/terms/identity/tssg) (for the Cloud Identity - Premium edition only).

- "URL Terms" means, collectively, the AUP, Cloud Data Processing Addendum, Service Specific Terms, SLA, and TSS Guidelines.

**15. Regional Modifications.** Customer agrees that the modifications described at https://cloud.google.com/terms/regional-modifications (https://cloud.google.com/terms/regional-modifications), or a successor URL, as may be updated from time to time, apply to the Agreement if Customer's billing address is in the applicable region and will govern to the extent of any conflict with the remainder of the Agreement.

Previous versions of the Cloud Identity Terms of Service

January 30, 2025 (/legal/archive/terms/identity/index-20250130) December 13, 2023 (/legal/archive/terms/identity/index-20231213) July 12, 2023 (/terms/identity/index-20230712) April 19, 2023 (/terms/identity/index-20230419) September 20, 2022 (/terms/identity/index-20220920)

March 24, 2022 (/terms/identity/index-20220324) September 6, 2021 (/terms/identity/index-20210906) August 24, 2021 (/terms/identity-20210824)

Americas (14 Jul 2021 (https://cloud.google.com/terms/identity/na_terms-20210714.html)), APAC (14 Jul 2021 (https://cloud.google.com/terms/identity/apac_terms-20210714.html)), EMEA - EEA (14 Jul 2021 (https://cloud.google.com/terms/identity/eea_terms-20210714.html)), EMEA - Non-EEA (14 Jul 2021 (https://cloud.google.com/terms/identity/emea_terms-20210714.html))

Previous versions of SecOps Services Agreement

May 23, 2024 (/archive/terms/secops-20240523) April 4, 2024 (/terms/secops/index-20240404) February 14, 2024 (/terms/secops/index-20240214) December 13, 2023 (/terms/secops/index-20231213) June 15, 2023 (/terms/secops/index-20230615) April 3, 2023 (/terms/secops/index-20230403) February 6, 2023 (/terms/secops/index-20230206) August 31, 2022 (/terms/secops/index-20220831) September 20, 2021 (/terms/secops/index-20210920) October 1, 2020 (/terms/secops/index-20201001)

Previous versions of the VirusTotal Terms of Service

January 27, 2021 (/terms/secops) December 11, 2018 (https://docs.virustotal.com/docs/historic-terms-of-service)

Previous versions of Looker (original) Services Terms of Service

January 30, 2025 (https://cloud.google.com/archive/terms/looker/msa-20250130) October 16, 2024 (https://cloud.google.com/archive/terms/looker/msa-20241016) December 13, 2023 (https://cloud.google.com/archive/terms/looker/msa/msa-20231213) October 4, 2023 (https://cloud.google.com/terms/looker/msa/msa-20231004) December 7, 2022 (https://cloud.google.com/terms/looker/msa/msa-20221207) February 14, 2022 (https://cloud.google.com/terms/looker/msa/msa-20220214/) August 19, 2021 (https://cloud.google.com/terms/looker/msa/msa-20210819/) April 1, 2021 (https://cloud.google.com/terms/looker/msa/msa-20210401) November 2, 2020 (https://cloud.google.com/terms/looker/msa/msa-20201102) June 1, 2020 (https://cloud.google.com/terms/looker/msa/msa-20200601) April 30, 2019 (https://cloud.google.com/terms/looker/msa/msa-201904) April 30, 2019

(https://cloud.google.com/terms/looker/legal/customer-hosted) February 28, 2019
(https://cloud.google.com/terms/looker/msa/msa-201902)

PREVIOUS VERSIONS OF GOOGLE CLOUD TERMS OF SERVICE *(Last modified March 24, 2026)*

February 09, 2026 _ (/legal/archive/terms/index-20260209) October 13, 2025 (/legal/archive/terms/index-20251013) July 1, 2025 _ (/legal/archive/terms/index-20250701) April 22, 2025 _ (/legal/archive/terms/index-20250422) January 30, 2025 (/legal/archive/terms/index-20250130) October 17, 2024 _ (/legal/archive/terms/index-20241017) September 30, 2024 _ (/legal/archive/terms/index-20240930) November 16, 2023 (/legal/archive/terms/index-20231116) July 12, 2023 _ (/terms/index-20230712) April 19, 2023 _ (/terms/index-20230419) February 6, 2023 _ (/terms/index-20230206) November 7, 2022 _ (/terms/index-20221107) September 20, 2022 (/terms/index-20220920) March 29, 2022 _ (/terms/index-20220329) September 20, 2021 _ (/terms/index-20210920) April 1, 2021 _ (/terms/index-20210401) November 2, 2020 _ (/terms/index-20201102) October 6, 2020 (/terms/index-20201006) August 31, 2020 _ (/terms/index-20200831) August 13, 2020 (/terms/index-20200813) March 26, 2020 _ (/terms/index-20200326) November 21, 2019 _ (/terms/index-20191121) July 22, 2019 _ (/terms/index-20190722) November 2, 2018 _ (/terms/index-20181102) November 1, 2018 (/terms/index-20181101) October 1, 2018 _ (/terms/index-20181001) June 27, 2018 (/terms/index-20180627) June 15, 2018 _ (/terms/index-20180615) June 5, 2018 (/terms/index-20180605) May 23, 2018 _ (/terms/index-20180523) May 18, 2018

(/terms/index-20180518) April 30, 2018 _ (/terms/index-20180430) April 4, 2018

(/terms/index-20180404) February 8, 2018 _ (/terms/index-20180208) January 9, 2018

(/terms/index-20180109) October 19, 2017 _ (/terms/index-20171019)